UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

IN RE:

    ALPHONSO LAMONT TAYLOR     BANKRUPTCY NO.: 20-41507-MLO
    CHAPTER 7
    HONORABLE MARIA L. OXHOLM

    DEBTOR
_____/
MARGUERITE HAMMERSCHMIDT (P53908)
Attorney for Debtor
26676 Woodward Ave
Royal Oak, MI 48067
(248) 988-8335

CRAIG S. SCHOENHERR, SR. (P32245)
Attorney for Creditor
Sterling Town Center
12900 Hall Road, Suite 350
Sterling Heights, MI  48313-1151
(586) 726-1000                      /

**EXHIBITS TO MOTION OF SANTANDER CONSUMER USA INC. DBA CHRYSLER CAPITAL AS SERVICER FOR CCAP AUTO LEASE LTD. FOR RELIEF FROM THE AUTOMATIC STAY AND FOR WAIVER OF PROVISIONS OF FRBP 4001(a)(3)**

    1.    Lease Agreement and Title

                      */s/ Craig S. Schoenherr, Sr.*
                      _____
                      CRAIG S. SCHOENHERR, SR. (P32245)
                      Attorney for Creditor
                      O'REILLY RANCILIO P.C.
                      Sterling Town Center
                      12900 Hall Road, Suite 350
                      Sterling Heights, MI  48313-1151
                      (586) 726-1000
                      ecf@orlaw.com

DATED:  February 24, 2020

# Motor Vehicle Lease Agreement - Closed End

**CHRYSLER CAPITAL**

☒ Monthly Payment Lease ☐ Single Payment Lease

| Lessor (Dealer Name and Address) | Lessee(s) (and Co-Lessee) Name(s) and Address(es) | Lessee's Garaging Address (where the Vehicle will be principally located) |
|---|---|---|
| RAY LAETHEM CHRYSLER DODGE JEEP RAM<br>18001 MACK AVE<br>DETROIT, MI 48224 | ALPHONSO LAMONT TAYLOR<br>20100 SHOALS CT<br>CLINTON TWP MI 48038-4926 | |

No.  
Date 06/21/2017

County MACOMB

☐ Refer to the attached addendum for additional Lessees and their signatures.

☐ Business, commercial or agricultural purpose lease.

### Description of the Leased Property (Vehicle)

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2017 | RAM | 1500 | PICKUP | 3C6RR7KT4HG524148 | 453 |

☒ New ☐ Used ☐ Demo  Equipped With:

You acknowledge that you have received and examined the Vehicle described above, that the Vehicle is equipped as described and is in good operating order and condition. You accept the Vehicle for all purposes of this Lease.

### Trade-In Vehicle and Its Allowance

Year 2016 Make CHEVROLET Model SILVERADO Gross Amount of Trade-In Allowance $ 25000.00  
Prior Credit or Lease Balance - $ 28827.00 **Net Trade-In Allowance = $ 0.00 (If less than zero, enter zero).

### Federal Consumer Leasing Act Disclosures

| 1. Amount Due at Lease Signing or Delivery (Itemized below)* | 2. Payments<br>a. Monthly Payments. Your first monthly payment of $657.25 is due on 06/21/2017 followed by 38 payments of $657.25 due on the 21st of each month. The total of your monthly payments is $25632.75.<br>b. Single Payment. Your payment of $N/A is due on N/A. | 3. Other Charges (Not part of your monthly or single payment)<br>Disposition fee (if you do not purchase the Vehicle) $395.00<br>N/A $N/A<br>N/A $N/A<br>N/A $N/A<br>N/A $N/A<br>N/A $N/A<br>Total $395.00 | 4. Total of Payments (The amount you will have paid by the end of the Lease) $34020.50 (Section 1 plus Section 2 total plus Section 3 total minus 5(b) and 5(d)) |
|---|---|---|---|
| $ 8650.00 | | | |

**5. Amount due at Lease signing or delivery:**

* Itemization of Amount Due at Lease Signing or Delivery

| a. Capitalized Cost Reduction | $ 7284.63 | i. SALES TAX | + $ 451.12 | How the amount due at Lease signing or delivery will be paid: |
|---|---|---|---|---|
| b. First Monthly Payment | + $ 657.25 | j. CVR FEE | + $ 24.00 | |
| c. Single Payment | + $ N/A | k. N/A | + $ N/A | Net Trade-In allowance** $ 0.00 |
| d. Refundable Security Deposit(s) | + $ N/A | l. N/A | + $ N/A | Rebates and non-cash credits + $ 7250.00 |
| e. Registration fees | + $ 8.00 | m. N/A | + $ N/A | Amount to be paid in cash + $ 1400.00 |
| f. Title fees | + $ 15.00 | n. N/A | + $ N/A | |
| g. Acquisition fee | + $ N/A | o. N/A | + $ N/A | |
| h. Documentation fees | + $ 210.00 | Total | = $ 8650.00 | <---> Total = $ 8650.00 |

### Your Payment is Determined as Shown Below:

Gross capitalized cost. The agreed upon value of the Vehicle ($ 38400.10) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance).  $ 43022.10

Capitalized cost reduction. The amount of any net trade-in allowance, rebate, non-cash credit, or cash you pay that reduces the gross capitalized cost. - $ 7284.63

Adjusted capitalized cost. The amount used in calculating your base payment. = $ 35737.47

Residual Value. The value of the Vehicle at the end of the Lease used in calculating your base payment. - $ 20426.30

Depreciation and any amortized amounts. The amount charged for the Vehicle's decline in value through normal wear and for other items paid over the Lease Term. = $ 15311.17

Rent charge. The amount charged in addition to the depreciation and any amortized amounts. + $ 8870.78

Total of base payments. The depreciation and any amortized amounts plus the rent charge. = $ 24181.95

Lease Term. The number of months in your Lease. 39

Lease payments. The number of payments in your Lease. ÷ 39

Base Payment = $ 620.05

Sales/use tax + $ 37.20

N/A + $ N/A

Total payment = $ 657.25

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and mileage in excess of 15000 miles per year at the rate of $ .25 per mile. (Excess Mileage Charge)

☒ **Purchase Option at End of Lease Term.** If the box in this line is checked, you have the option to purchase the Vehicle at the end of the Lease Term for $ 20426.30 and a purchase option fee of $ 350.00. The purchase option price does not include official fees such as those for taxes, tags, license and registration which you will also be required to pay.

**Other Important Terms.** See Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

Motor Vehicle Lease-MI
Chrysler Capital is a trademark of Chrysler Group LLC and licensed to Santander Consumer USA Inc.
Wolters Kluwer Financial Services 16-2507-mlo   Doc 16   Filed 02/24/20   Entered 02/24/20 14:43:41   Page 2 of 6
SAN-MVLCE-MI-5/1/2013
Page 1 of 4

## Itemization of Gross Capitalized Cost

| | | | | | |
|---|---|---|---|---|---|
| Agreed upon value of the Vehicle | $ 38400.10 | Extended Warranty and Service Contract | $ N/A | Acquisition fee | $ 795.00 |
| Sales or Use Tax and any other applicable taxes | $ N/A | Documentation fee | $ N/A | N/A | $ N/A |
| | | Outstanding Prior Credit or Lease Balance and Negative Equity | | N/A | $ N/A |
| Title, License and Registration fees | $ N/A | | $ 3827.00 | N/A | $ N/A |
| | | | | N/A | $ N/A |
| | | | | Total | $ 43022.10 |

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required as part of this Lease and will not be a factor in our decision to lease the Vehicle to you.
Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**

| | |
|---|---|
| Term | N/A |
| Price | $ N/A |
| Coverage | N/A |

☐ **Gap Waiver or Gap Coverage**

| | |
|---|---|
| Term | N/A |
| Price | $ N/A |
| Coverage | N/A |

☐ **Mechanical Breakdown Protection (MBP)**

| | |
|---|---|
| Term | N/A |
| Price | $ N/A |
| Coverage | N/A |

☐ **Extended Warranty**

| | |
|---|---|
| Term | N/A |
| Price | $ N/A |
| Coverage | N/A |

_____ Date

_____ Date

## Additional Terms

**Additional Fees and Charges.** Information about a Security Deposit and a Late Charge can be found in the *Additional Lease Terms* section. In addition to the other amounts promised in this Lease, you agree to pay the following.

- **Vehicle Return Fee.** You will pay us a Vehicle Return Fee of $ **495.00** if this Lease is terminated before the end of the scheduled Lease Term and the Vehicle is returned to us or to our agents. This Fee will not apply if the Lease ends early by your purchase of the Vehicle.
- **Disposition Fee.** You will pay us a Disposition Fee of $ **395.00** when you return the Vehicle at the end of the scheduled Lease Term. This Fee will not apply if the Lease ends early or if you buy the Vehicle at the end of the Lease Term (if you have that option).
- **Official Fees and Taxes.** The estimated total amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included with your monthly (or single) payment or assessed otherwise: $ **1924.92**. The actual total of fees and taxes may be higher or lower, depending on the tax rates in effect or the value of the leased property at the time a fee or tax is assessed.

☒ **Service Charge for Unclaimed Security Deposit Refunds.** Unless prohibited, if we send you a check after this Lease ends to refund the remaining portion of any Security Deposit and you do not collect that check within six months, you agree that we may deduct a monthly service charge of $ **N/A** from the remaining portion of any Security Deposit until it is gone or otherwise refunded to you.

**Warranties.** The Vehicle is subject to the following express warranties that apply to this Lease.

☐ The standard written manufacturer's warranty. This warranty is made by the manufacturer and NOT by the Lessor.

☐

By signing this Lease, you acknowledge receiving a copy of the above written warranties. You understand that we (the Lessor) make no express or implied warranties other than those described above (if any). Except as required by law, the Lessor makes no implied warranty of merchantability and no warranty that the Vehicle is fit for a particular purpose. Except as provided above, you take the Vehicle as is and with all faults.

## Other Terms

## Additional Lease Terms

**Definitions.** "You", "your" and "Lessee" mean each person or legal entity, jointly and individually, who signs this Lease as the "Lessee". "We", "our", "us" and "Lessor" mean the Lessor who signs this Lease and its successors and assigns.

**Agreement to Lease.** You agree to lease the motor vehicle described in this Lease ("Vehicle") from us under the terms of this Lease. You agree to pay all amounts due and to perform all your obligations under this Lease. You intend to use the Vehicle primarily for personal, family or household purposes, unless the "Business, commercial or agricultural purpose lease" box is checked. Applicable provisions of the Federal Consumer Leasing Act are part of this Lease.

**General Terms.** You agree that the law of the state where this Lease is signed will govern this Lease, unless prohibited. If any part of this Lease cannot be enforced, the rest of the Lease will still be enforceable.

**Indemnity.** To the fullest extent permitted by law and unless otherwise prohibited by law, you agree to indemnify and hold us harmless and our successors and assigns from all liability, claims, losses, demands, damages of all kinds, expenses (including reasonable legal fees and expenses, unless prohibited), fines and penalties we suffer or incur resulting from the possession, operation, condition, maintenance or use of the Vehicle during the Lease Term.

**Notices.** Unless otherwise required by law, you agree that any notice we provide you will be reasonable and sufficient if it is sent by first class mail, addressed to you at the address given in this Lease or to your last known address as reflected in our records. You will notify us in writing within 30 days of any change in your address or where the Vehicle is garaged.

**Security Deposit.** If included in the Itemization of Amount Due at Lease Signing or Delivery section you will give us a refundable Security Deposit in the amount indicated. It may be used to pay any amount that you do not pay when due. After all your obligations are paid under this Lease, we will return any remaining amount to you. You agree to cash, deposit or otherwise collect any check we send you to refund any remaining portion of the Security Deposit within six months of the date on the check. Unless prohibited, you also agree that we may, beginning six months after the date of any refund check that remains uncollected, impose any monthly service charge described in the *Service Charge for Unclaimed Security Deposit Refunds* section. Unless prohibited, you will not be entitled to interest on your Security Deposit or to any other benefit, increase or profits that accrue to us as a result of holding the Security Deposit.

**Late Charge.** This section applies if this is a Monthly Payment Lease. If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of the lesser of $20 or 5% of the unpaid amount of the payment.

**Vehicle Use.** You agree to the following.

- You agree to allow the Vehicle only to be operated by licensed drivers for lawful purposes and in a lawful manner.
- You agree to operate the Vehicle only as recommended by the manufacturer.
- You agree not to use the Vehicle as a taxi or for other public or private hire or delivery.
- You agree not to use the Vehicle in a way that causes the cancellation or suspension of any warranty, insurance or other similar vehicle protection agreement.
- You agree not to take the Vehicle out of the state where you reside for more than 30 consecutive days without our prior written approval.
- You agree not to take the Vehicle out of the United States without our prior written approval.

**Maintenance and Operating Costs.** You agree to keep the Vehicle in the same condition as when you received it, except for reasonable wear and mileage. You agree to service and maintain it as recommended by the manufacturer and as needed to keep it in good operating condition. You also agree to maintain the Vehicle so that any warranties or similar agreements remain effective and so that it passes all inspections required by law. You are responsible for paying all costs of the Vehicle's service, repair and maintenance and all the costs of its operation, including the costs of gas, oil, parking, storage, violations, etc. You agree to make the Vehicle available to us for inspection during the Lease Term at any reasonable time and location that we request.

**Required Insurance.** You are liable for any injury, death or damage arising out of the use of the Vehicle. You agree to provide at least the following insurance coverage ("*Required Insurance*") on the Vehicle at all times during this Lease.

- Liability for bodily injury or death of others in an amount of at least $100,000 per person and $300,000 per occurrence.
- Liability for property damage to others in an amount of at least $50,000.

Motor Vehicle Lease-MI
Chrysler Capital is a trademark of Chrysler Group LLC and licensed to Santander Consumer USA Inc.
Wolters Kluwer Financial Services © 2013
SAN-MVLCE-MI 5/1/2013
Page 2 of 4

20-41507-mlo    Doc 16    Filed 02/24/20    Entered 02/24/20 14:43:41    Page 3 of 6

or the estimated loss in its value, because of any excessive wear (even if we do not repair the Vehicle). Excessive wear includes the following.

- **Mechanical** damage, failure or defect.
- **Repairs or replacement parts**, including tires, that are not made with original equipment manufacturer's parts unless we specifically approve the use of such repairs or parts in advance and in writing.
- **Exterior** parts, grilles, bumpers, trim, paint and glass that are dented, scratched, chipped, discolored or otherwise damaged, missing or worn beyond ordinary use.
- **Interior** parts, upholstery, dashboard, carpeting or trunk liner that are stained, torn, burned or otherwise damaged, missing or worn beyond ordinary use.
- **Accessories, tools and equipment** included with the Vehicle when delivered that are missing, damaged or not in proper working order.
- **Tires** that are retreads, unsafe, have less than 1/8 inch tread at the shallowest point or are not a part of a matching set of four.
- Any other part or condition that causes the Vehicle to be **unsafe or unlawful** to use.
- Any other damage or wear that together cost more than $50 to repair or replace.

We will notify you of the amount of these charges and provide any other related information as may be required by law. The charges will be due as soon as the amount is determined unless otherwise provided by law. When you return the Vehicle at the end of the scheduled Lease Term, you agree to pay any Excess Mileage Charge as described in the *Federal Consumer Leasing Act Disclosures* section.

**Titling, Official Fees and Taxes.** You understand and agree that this Lease is a lease only. We own the Vehicle, and it will be titled in our name or in the name of our assignee. You have no ownership interests in the Vehicle except for any future options to purchase provided in this Lease. **You agree to pay all title, registration, license, sales, use, excise, personal property, ad valorem, inspection, testing and all other taxes, fees and charges imposed by government authorities in connection with the Vehicle and this Lease during the Lease Term, except our income taxes.** If such amounts are assessed for a period during the Lease Term, you will pay them even if they become due after the Lease Term. We may, at our discretion, determine the timing and procedures for payment of these amounts. You will promptly pay these amounts as they come due unless otherwise indicated in this Lease. The actual total of official fees and taxes that you pay may be higher or lower than our estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.

**Assignments and Transfers.** We may sell, assign or in any other way transfer our rights and responsibilities in the Vehicle and this Lease.

**You will not sublease the Vehicle, assign, pledge or permit a security interest to be created in, or in any other way transfer your interests or responsibilities in the Vehicle and in this Lease.** We may, at our discretion, give you permission to make a transfer that is otherwise prohibited. Such permission must be given in writing prior to any transfer.

### Arbitration Agreement

**Please Read Carefully! Notice of Arbitration.**

**By agreeing to this Arbitration Agreement you are giving up your right to go to court for claims and disputes arising from this Lease if you or we choose to arbitrate.**

- **You or we may choose to have any dispute between us decided by arbitration, and not by a court or by jury trial.**
- **If a dispute is arbitrated, you give up your right to join as a class representative or class member in any class action or class arbitration that you may have against us.**
- **In arbitration, discovery and rights to appeal are generally more limited than a judicial proceeding, and other rights that you and we would have in court may not be available.**

At your or our election, any claim or dispute in contract, tort, statute or otherwise between you and us or our employees, agents, successors or assigns that arises out of, or relates to your credit application, this Lease or any related transaction or relationship is to be decided by neutral, binding arbitration. Also, to the extent allowed by law, the validity, scope, and interpretation of this Arbitration Agreement is to be decided by neutral, binding arbitration.

If you or we choose to arbitrate a claim or dispute, you and we agree that no trial by jury or other judicial proceeding take place. In addition, you agree not to participate as a class representative or class member on any class claim that you may have against us, including class arbitration. You and we also agree that any claim or dispute is to be heard and decided by one arbitrator only, and only on an individual basis, and not as a class action.

For the arbitration, you and we will use the following arbitration provider and its applicable rules: National Arbitration and Mediation (NAM), 990 Stewart Ave., Garden City, NY 11530 (www.namadr.com). You can get a copy of NAM's rules by contacting it or visiting its website. If NAM is unwilling or unable to serve as the arbitration provider, the arbitrator will be selected pursuant to 9 U.S.C. sections 5 and 6.

The arbitration hearing will be carried out in the federal district where you reside, unless you and we agree otherwise. If arbitration begins, we will advance your filing, administration, service or case management fee, and your arbitrator or hearing fee all up to a total maximum of $1,500. Unless the arbitrator awards them to a party, each party is responsible for the fees of its attorney(s), experts, witnesses, and any other fees and costs of arbitration, including any amount we have advanced.

The arbitrator will be a lawyer or a former judge. In making an award, the arbitrator shall follow governing substantive law. The arbitrator has the authority to order specific performance, compensatory damages, punitive damages and any other relief allowed by applicable law. Other than the grounds for review under the Federal Arbitration Act, the arbitration award is final and binding on all parties. Any court having jurisdiction may enforce the arbitrator's award.

You or we can do the following without giving up the right to require arbitration.

- Seek remedies in small claims court for claims within that court's jurisdiction, unless these claims are transferred, removed, or appealed to a different court. If so, either you or we can require the transfer of these claims to arbitration.
- Seek judicial provisional remedies.
- Exercise self-help remedies and to take measures that do not involve a court or arbitration, including, but not limited to, setting off against a deposit account and repossessing property.
- Exercise foreclosure against any real or personal property, collateral or other security.

The Federal Arbitration Act (9 U.S.C. § 1 et seq.) governs this Arbitration Agreement, and not any state law concerning arbitration, including state law arbitration rules and procedures. This Arbitration Agreement survives any termination, payoff or transfer of this Lease. If any part of this Arbitration Agreement is not enforceable, the rest is enforceable; but if the waiver of class action rights is unenforceable, this entire Arbitration Agreement is unenforceable.

By signing this Lease you and we understand and agree to be bound by its terms, and expressly waive our rights to trial by jury and judicial process, and review, except as allowed by law. **Caution: It is important that you read this Arbitration Agreement thoroughly before you sign this Lease. By signing it, you are accepting that you have read, understand and agree to this Arbitration Agreement, and have received a copy of it. If you do not understand something in this Arbitration Agreement, do not sign this Lease; instead ask your lawyer. You or we may reject this Arbitration Agreement by sending to the other a rejection notice by certified or registered mail or by messenger service within 10 days after the date of signing this Lease.**

### Notices

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

**Notice.** You have no ownership rights in the Vehicle unless and until you exercise your option to purchase the Vehicle.

**Charges on Early Termination.** On Early Termination, we will determine the early termination pay-off balance of the Vehicle, which may be different than the actual cash value of the Vehicle as determined by the Vehicle's insurer, if insurance benefits are involved. If the Lease ends because the Vehicle is stolen and not recovered, or is lost, destroyed or damaged, you must pay us the difference between the early termination pay-off balance and the actual cash value of the Vehicle as determined by the Vehicle's insurer.

By initialing below, you represent that you read and understand this Notice.

Initials _AT_

**Arbitration.** This Lease contains an Arbitration Agreement that <u>affects your rights</u>. By signing this Lease, you agree to the terms of the Arbitration Agreement.

### Signatures

**Entire Agreement.** Your and our entire agreement is contained in: (a) this Lease; and (b) any related agreement between you and us about conditions that must be satisfied after delivery of the Vehicle. There are no unwritten agreements regarding this Lease. Any change to this Lease must be in writing and signed by you and by us.

_[signature]_ 06/21/2017
ALPHONSO LAMONT TAYLOR    Date

_____  _____
                                  Date

**Notice to Lessee.** (1) Do not sign this Lease before you read it or if it contains any blank spaces; (2) You are entitled to a completely filled-in copy of this Lease; (3) This is a Lease agreement and not a purchase agreement. Please seek independent professional advice if you have any questions concerning this transaction.

By signing below, you agree to the terms of this Lease. You received a copy of this Lease and had a chance to read and review it before you signed it.

_[signature]_ 06/21/2017
ALPHONSO LAMONT TAYLOR    Date

_____  _____
                                  Date

**Lessor's Acceptance.** By signing below, Lessor agrees to the terms and conditions of this Lease.

- **Lessee DL Inspection.** The Lessor inspected each Lessee's driver's license and compared and verified the signature on each license with a signature of each Lessee, written in Lessor's presence. Lessor believes that each Lessee providing such information is currently licensed to drive by the state of his/her residence.
- **Assignment.** Lessor assigns this Lease and all rights and title to the Vehicle to the Assignee identified below (if any). This assignment is subject to any separate Assignment Agreement between the Lessor and Assignee.

Assignee Name  **CCAP AUTO LEASE LTD**
Address        **PO BOX 961272**
               **FORT WORTH TX 76161**

Phone

_[signature]_ 06/21/2017
                                  Date

Motor Vehicle Lease-MI
Chrysler Capital is a trademark of Chrysler Group LLC and licensed to Santander Consumer USA Inc.
Wolters Kluwer Financial Services   SAN-MVLCE-MI 5/1/2013
20-41507-mlo   Doc 16   Filed 02/24/20   Entered 02/24/20 14:43:41   Page 4 of 6

- **Collision** and **comprehensive** (including fire and theft coverage) with a deductible not to exceed $1,000.

You agree to provide the insurance at your own expense from an insurer authorized to do business in the state where you are located or an eligible surplus lines insurer. This insurance may be provided through existing policies that you own or control. You also agree to name us or our assignee as loss payee and additional insured. The insurance policy must provide for at least 10 days advance notice to us of any cancellation or other material change in coverage. At our request, you will promptly deliver to us a copy of the policy and proof of the payment of premiums. If you fail to meet these requirements, we may obtain insurance on your behalf at your expense.

**You are leasing the Vehicle from us. We own the Vehicle. You are required to maintain insurance on the Vehicle to protect our interest. If you fail to provide evidence of insurance on the Vehicle to us, we may place insurance on the Vehicle and you are responsible for the cost of the insurance we place on the Vehicle.**

You will promptly contact us in writing if any of the insurance provider information changes. You authorize us to endorse your name on any check we receive for insurance proceeds.

**Notice. Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Lease.**

**Damage to the Vehicle and Insurance Claims.** You will notify us in writing immediately after any loss to person or property occurs involving the Vehicle in any way. You will also notify us in writing immediately upon receiving notice of any demand, claim or suit involving the Vehicle in any way. You agree to fully cooperate with us and with your insurer in any investigation, suit or other action resulting from the use or control of the Vehicle.

You agree to repair or compensate us for any loss or damage to the Vehicle that occurs during this Lease. If the Vehicle is damaged, we will decide if it is repairable and if it should be repaired. If the Vehicle is repaired, you will apply to the costs of repair any insurance proceeds you receive for its loss or damage. You understand that you must pay for any loss or damage that is not paid by insurance proceeds. You must also keep making any payments as they come due during this Lease even if the Vehicle is damaged or unusable for a period of time. The *Theft, Loss or Irreparable Damage* section describes what happens if we decide that the Vehicle cannot or should not be repaired.

**Theft, Loss or Irreparable Damage.** If the Vehicle is stolen and not recovered, or is lost or destroyed, or is damaged and we determine that it cannot or should not be repaired, then we will decide whether to continue or terminate this Lease. If it is continued, you agree to accept a reasonable substitute vehicle of similar value, condition, mileage and accessories to replace the original Vehicle. If we terminate the Lease under this section, the event will be treated as an early termination and you will be required to pay the Gap Amount (defined below).

**Default.** You will be in default on this Lease if any one of the following occurs (except as prohibited by law).
- You fail to make any payment when it is due.
- You fail to perform any material obligation that you have undertaken in this Lease (which includes doing something you have agreed not to do).
- The Vehicle is seized, confiscated or levied upon by legal or governmental process.
- You fail to provide the Required Insurance on the Vehicle or fail to provide proof of such coverage after we request it.
- Anything else happens that creates a default according to applicable law.

If this Lease is in default, we may exercise our remedies against any or all Lessees.

**Remedies.** If this Lease is in default, we may take any one or more of the following actions. If the law requires us to do so, we will give you notice and wait any period of time required before taking some or all of these actions.
- We may terminate this Lease and your rights to use the Vehicle.
- We may take any reasonable action to correct your default or to prevent our loss (including, for example, purchasing insurance that you agreed to provide). Any amount we pay will be added to the amount you owe us and will be immediately due.
- We may require you to return the Vehicle and any related records or make them available to us in a reasonable manner.
- We may take back the Vehicle by legal process or self help, but in doing so, we may not breach the peace or violate the law.
- We may use any other remedy available to us in this Lease or by law.

You agree that, subject to your right to recover such property, if any, we may take possession of personal property left in or on the Vehicle when we take back the Vehicle. You agree to repay us for any reasonable amounts we pay to correct your default, unless prohibited by law. You also agree to reimburse us for any costs and expenses we incur in the Vehicle's return and disposition or resulting from early termination, unless prohibited by law. This amount includes, for example, our court costs and, to the extent permitted by applicable law, reasonable attorneys' fees. By choosing any one or more of these remedies, we do not give up our right to use another remedy. By deciding not to use any remedy should this Lease be in default, we do not give up our right to use that remedy if the same kind of default happens again.

**Lease Termination.** This Lease will end ("*terminate*") when one of the following events occurs, whichever happens first.
- You choose to end the Lease early and return the Vehicle to us.
- You choose to buy the Vehicle (if you have that option).
- You return the Vehicle at the end of the scheduled Lease Term.
- We terminate the Lease because the Vehicle is stolen and not recovered, or is lost or destroyed, or is damaged and we determine that it cannot or should not be repaired or replaced.
- We terminate the Lease due to your default.

On termination, you will pay the amounts agreed to in this Lease. **You are not entitled to keep the Vehicle past the end of the scheduled Lease Term or the date of early termination without our prior consent.**

**Gap Coverage.** If the Vehicle is subject to total loss due to collision, destruction or unknown theft as determined by us, you will pay to us the Gap Amount, which is the difference between the Early Termination Liability (set forth herein) and the insurance proceeds received by us on account of the total loss of the Vehicle. However, if you had in effect the vehicle insurance required under this Lease at the time of the total loss, we will waive the Gap Amount and you will pay us the sum of: (A) all monthly payments overdue and any other amounts that are due or past due at the time of the loss; **plus** (B) the amount of your insurance deductible and any other amounts that were subtracted from the Vehicle's actual cash value to determine the insurance proceeds we received for the total loss; **plus** (c) any rebates of charges for warranties, mechanical breakdown protection or maintenance contracts, purchased in connection with this Lease. Even if the Vehicle is insured, you must continue to pay your scheduled monthly payments until we receive your full insurance proceeds.

**Early Termination.** This section applies if the Lease terminates before the end of the scheduled Lease Term. It does not apply if you choose to buy the Vehicle before the end of the scheduled Lease Term. On early termination, you will return the Vehicle to us. You will deliver it to our address or to another reasonable location at our request.

**Early Termination Liability.** On early termination, you agree to pay us the following items.
- A Vehicle Return Fee, if any, described in the *Additional Fees and Charges* section.
- An early termination administrative charge equal to the number of base monthly payments shown in the chart below which is based upon the percentage of months in the Lease Term which have expired.

  | % of Months in Lease Term Expired: | Number of Base Monthly Payments Due: |
  |---|---|
  | 0-25% | 2.5 |
  | 26-50% | 2.0 |
  | 51-75% | 1.5 |
  | 76-99% | 1.0 |

- All accrued and unpaid amounts that are due or past due at that time (including amounts described in the *Remedies* section).
- The amount by which the Adjusted Lease Balance at that time exceeds the Realized Value. (If the Realized Value is greater than the Adjusted Lease Balance, the excess will be applied as a credit toward your liability. Any remaining amount of the excess will be credited to you only if this is a Single Payment Lease.)
- All official fees and taxes imposed in connection with the Lease termination.

If the early termination occurred because of theft, loss or irreparable damage to the Vehicle, any insurance or Gap Product proceeds received by us for that theft, loss or damage will be applied to pay that early termination liability.

**Determining the Adjusted Lease Balance.** Your early termination liability under this section will be calculated using the "*Adjusted Lease Balance*". A "*Month*" is a period of approximately 30 days beginning on the same day of a month that the payment(s) is/are due (or on the last day of a month if there is no same day in that month). If this Lease is a Single Payment Lease, the Adjusted Lease Balance at the beginning of the Lease is equal to the Adjusted Capitalized Cost minus the Base Payment. At the beginning of each Month, the Adjusted Lease Balance increases by the Rent Charge for that Month. The Rent Charge for each Month in a Single Payment Lease is equal to the Lease Rate times the Adjusted Lease Balance before that increase. The Lease Rate is the rate that will cause the monthly increases described above to increase the Adjusted Lease Balance to the Residual Value over the Lease Term. If this Lease is a Monthly Payment Lease, the Adjusted Lease Balance at the beginning of this Lease is equal to the Adjusted Capitalized Cost. At the end of each Month, the Adjusted Lease Balance will be reduced by adding the Rent Charge for that Month and then subtracting the amount of the Base Monthly Payment. That Rent Charge for a Monthly Payment Lease is equal to (a) the Adjusted Lease Balance at the beginning of the Month minus the Base Monthly Payment amount, multiplied by (b) the Lease Rate. The Lease Rate is the rate which will cause monthly reductions described above to reduce the Adjusted Lease Balance to the Residual Value over the Lease Term. All the calculations referred to above are done as though each Month has exactly 30 days.

**Determining the Realized Value.** If the law so requires, we will send you a notice and wait any required period of time before taking action to establish the Vehicle's Realized Value. Unless otherwise required by law, the Realized Value will be determined in one of the following ways.
- It will be determined by a written agreement between you and us reached within 10 days of the Vehicle's return.
- It will be determined by the professional appraisal of an independent third party agreed to by you and us and obtained at your expense within 10 days of the Vehicle's return (or a longer period, if all parties so agree or if the law so requires). The appraisal shall be of the Vehicle's wholesale value and shall be final and binding on both you and us.
- If it is not determined within 10 days of the Vehicle's return, we will determine the Realized Value, at our sole discretion, either in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles by obtaining a wholesale cash bid for the purchase of the Vehicle or by disposing of the Vehicle in an otherwise commercially reasonable manner. If the law requires a specific method or process, we will follow it as required. If we use a bid procedure, you may have the right to submit a cash bid which we will consider along with any other offers we may receive. We do not have to sell the Vehicle but will use the highest offer amount we receive in calculating your liability. The Realized Value will be zero if the Vehicle is not returned to us.

**Option to Purchase Before the End of the Lease Term.** You have the option to purchase the Vehicle at any time as long as we have not declared the Lease to be in default. You must give us at least 30 days prior notice of your intent to purchase. The Vehicle sale price will be the sum of: (a) All officials' fees, taxes and other costs incurred for the purchase (or to prepare the Vehicle for purchase) and all other fees and charges then due or past due under the Lease; and (b) the Adjusted Lease Balance.

**Scheduled Termination.** Unless this Lease ends under another section of this Lease, you will return the Vehicle to us on the last day of the scheduled Lease Term. You agree to return it to our address or to another reasonable location that we may request. You may return the Vehicle up to 15 days before the last day of the scheduled Lease Term at your option and for your own convenience, without any adjustment (charges or credits) for an "*early*" return.

On termination under this section, you agree to pay us the following items.
- A Disposition Fee, if any, described in the *Additional Fees and Charges* section.
- An Excess Wear Charge and an Excess Mileage Charge, if any, described in the *Excess Wear and Mileage* section.
- All other amounts then due or past due under this Lease.

These amounts are due and payable at the time you return the Vehicle or as soon thereafter that they can be determined unless otherwise provided by law. You will also pay us for all reasonable losses and expenses we incur if you fail to return the Vehicle at the end of the scheduled Lease Term.

**Option to Purchase at the End of the Lease Term.** The Purchase Option at End of Lease Term section in the *Federal Consumer Leasing Act Disclosures* section describes your option to purchase the Vehicle at the end of the scheduled Lease Term (if any) and the Vehicle's purchase price. If you have the option, it is available only if we have not already declared the Lease to be in default. You must also give us at least 30 days prior notice of your intent to purchase.

**Excess Wear and Mileage.** When you return the Vehicle at the end of the scheduled Lease Term, you agree to pay an Excess Wear Charge for any excessive wear to the Vehicle. The Excess Wear Charge will be equal to the actual or estimated costs of repair,

Motor Vehicle Lease-MI
Chrysler Capital is a trademark of Chrysler Group LLC licensed to Santander Consumer USA Inc.
Wolters Kluwer Financial Services © 2013
SAN-MVLCE-MI 5/1/2013
Page 5 of 6

20-41507-tjt   Doc 16   Filed 02/24/20   Entered 02/24/20 14:43:41   Page 5 of 6

# STATE OF MICHIGAN

## CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY STYLE |
|---|---|---|---|---|
| 3C6RR7KT4HG524148 | 2017 | RAM | 1500 | PICKUP |

| TITLE NUMBER | ISSUE DATE | ODOMETER | BRAND/LEGEND |
|---|---|---|---|
| | 06/28/2017 | 000453 | |

| WEIGHT/FEE CATEGORY | ODOMETER BRAND |
|---|---|
| 34 | *ACTUAL MILEAGE* |

**OWNER(S) NAME AND ADDRESS**

CCAP AUTO LEASE LTD LSR
ALPHONSO LAMONT TAYLOR LSE
20100 SHOALS CT
CLINTON TOWNSHIP MI 48038

First Secured Party
CCAP AUTO LEASE LTD
PO BOX 961272
FORT WORTH    TX    76161

Filing Date: 06-21-2017

Release of First Lien:
X _____
Signature of Agent        Date

## Title Assignment by Seller

State and federal laws require the seller(s) to indicate mileage when ownership is transferred. Failure to complete or providing false information may result in civil liability, fines and/or imprisonment. ANY ALTERATION, ERASURE, FALSE STATEMENT, FORGERY OR FRAUD VOIDS THIS TITLE AND IS A CRIME.

**Completed by Seller**

I warrant that the ownership of the vehicle described on Certificate of Title has been transferred to the following purchaser(s) and is free of all previous liens

| Printed Name of Purchaser(s) | | Date of Sale | Selling Price |
| Purchaser's Street Address | City | State | Zip |

I (we) certify that the odometer reading is: ☐☐☐☐☐☐.☒ and that to the best of my knowledge the odometer mileage is:
(No Tenths)
☐ actual mileage  ☐ not actual mileage - **WARNING ODOMETER DISCREPANCY**  ☐ exceeds mechanical limits of odometer (odometer has rolled over)

| Signature of Seller(s) X | Printed Name of Seller(s) | | |
| Seller's Street Address | City | State | Zip |

**Completed by Buyer**

A $15.00 Late Fee is Due for Failure to Apply for Title Within 15 Calendar Days of Date of Assignment
"I am aware of the above odometer certification made by the seller(s)."

| Signature of Purchaser(s) X | Printed Name of Purchaser(s) |

NEW LIENHOLDER INFORMATION: The information below must be on an application for title and presented to the Michigan Department of State

| Secured Party: | Address |

The State of Michigan, Michigan Department of State certifies that this certificate of title is issued in compliance with the laws of Michigan and constitutes prima facie proof of ownership. Further, on the date of title issuance, the described vehicle was subject to the security interest(s) listed above

MAILING ADDRESS

CCAP AUTO LEASE LTD
PO BOX 961272
FORT WORTH TX 76161

**\*\*NOTICE TO SELLERS\*\***
Sellers must keep a receipt or photocopy of the reassigned title for their records for 18 months or accompany the purchaser to a Secretary of State Office.

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS